UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD J. GRIMSLEY, III,                          :
                                                   :
         Plaintiff,                                :        Civil Action No.:      25-1453 (RC)
                                                   :
    v.                                             :        Re Document No.:    44
                                                   :
UNITED STATES OF AMERICA,                          :
                                                   :
         Defendant.                                :

## MEMORANDUM OPINION

### DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE FIFTH AMENDED COMPLAINT

## I.  INTRODUCTION

Plaintiff Richard J. Grimsley ("Plaintiff") is a retired Army veteran who suffers from post-traumatic stress disorder ("PTSD") and a traumatic brain injury ("TBI"), among other ailments. As a result of those conditions, the Army permanently retired Plaintiff with a 100% disability rating. After this action was transferred to the U.S. Court of Federal Claims and later returned to this Court, Plaintiff now seeks leave to file a Fifth Amended Complaint. In that proposed complaint, he alleges that the Department of Defense and the Army maintain an unlawful policy governing military disability retirement and otherwise committed legal errors during his disability evaluation process. According to Plaintiff, that purported policy and those alleged errors delayed his permanent disability retirement and, consequently, his receipt of disability-related benefits. He seeks declaratory and injunctive relief under the Administrative Procedure Act ("APA"). Because the proposed complaint does not plausibly allege that the requested relief would redress Plaintiff's past alleged injuries, however, Plaintiff lacks Article III standing. Amendment would therefore be futile. Plaintiff's motion for leave to amend is therefore denied.

## II.  BACKGROUND

### A.  Legal Background: Integrated Disability Evaluation System

"Military disability retirement entitles former service members to receive increased retirement pay and other enhanced benefits relative to standard retirement." *Fulbright v. McHugh,* 67 F. Supp. 3d 81, 85 (D.D.C. 2014), *aff'd sub nom.*, *Fulbright v. Murphy*, 650 F. App'x 3 (D.C. Cir. 2016). "Qualifying for disability retirement, however, is no small task. Military regulations establish a complex web of procedures for obtaining disability benefits after leaving active service." *Id.* While the majority of these regulations need not be discussed here, a summary of the procedures involved in the process may aid in understanding the facts and legal issues involved in this case.

The Integrated Disability Evaluation System ("IDES") is a joint disability evaluation process administered by the Department of Defense ("DoD") and the Department of Veterans Affairs ("VA"). *White v. United States*, 179 Fed. Cl. 609, 614 (2026). Through IDES, the two agencies coordinate their respective disability determinations by sharing medical information and conducting medical examinations and disability ratings concurrently, rather than through separate processes. *Id.* The VA assists DoD in determining whether wounded, injured, or ill service members are fit for continued military service and, where appropriate, awards disability compensation to veterans. *Id.*

A service member does not apply for or elect to participate in IDES. Rather, the member is referred into the system by his or her military branch. *Id.* Following referral, VA medical personnel examine the service member to evaluate the conditions underlying the referral, as well as any additional medical conditions identified by the member. *Id.* A Medical Evaluation Board ("MEB") then reviews the medical evidence and determines whether the service member's

documented medical conditions satisfy applicable medical retention standards.[1] *See id.*; Army

Reg. 635-40 ¶ 4-7(a). If the MEB concludes that the service member does not meet retention

standards, it refers the case to the Physical Evaluation Board ("PEB") for a determination of

fitness for continued military service.[2] *See White*, 179 Fed. Cl. at 614–15; Army Reg. 635-40

¶ 4-12(f).

The PEB determines whether the service member is fit for continued military service and,

if not, identifies the medical conditions that render the member unfit, whether those conditions

are service connected, and whether they are compensable. *See White*, 179 Fed. Cl. at 615 n.12;

Army Reg. 635-40 ¶¶ 4-19, 4-22 to -24. The PEB process consists of two levels of review: an

Informal PEB and, if requested by the service member, a Formal PEB. *See White*, 179 Fed. Cl. at

615 n.12.

If the PEB determines that the service member is fit for duty, the member remains in

military service. *See* U.S. Dep't of Veteran Aff., M21-1 Adjudication Procedures Manual

§ X.i.6.I.1.b.  If the PEB determines that the member is unfit, it notifies the VA, which issues a

proposed disability rating based on the unfitting conditions. *Id.* That rating is used to determine

---

[1] "Retention standards" are the medical fitness standards used to determine whether a service member may continue serving in the military. *See* Army Reg. 40-501 ¶¶ 3-1, 3-2. If a service member's medical condition fails to satisfy those standards, the member is referred for disability evaluation through the IDES process. *See* Army Reg. 635-40 ¶ 4-7.

[2] A service member who disagrees with the MEB's findings may request an Impartial Medical Review by an independent medical provider who was not involved in the MEB proceedings. *See White*, 179 Fed. Cl. at 615 n.11; Army Reg. 635-40 ¶¶ 4-13(a), 4-14(a)-(d). The reviewing provider advises the service member regarding the MEB's findings and recommendations, after which the service member may submit a rebuttal. *See* U.S. Dep't of Def., DoD Instruction 1332.18 § 3.2(e)(4)–(6). Depending on the outcome of the Impartial Medical Review, additional proceedings before the MEB may be required. *See White*, 179 Fed. Cl. at 615 n.11; Army Reg. 635-40 ¶¶ 4-14(e)–(i), 4-15.

the service member's eligibility for DoD disability retirement benefits and VA disability compensation.[3] *See White*, 179 Fed. Cl. at 614.

A service member whose disability is determined to be permanent and rated at 30 percent or greater—or who has at least twenty years of military service—is placed on the Permanent Disability Retired List ("Permanent DRL"). *See* 10 U.S.C. § 1201(a)–(b); Army Reg. 635-40 ¶ 4-27(1). If the service member is found unfit because of a disability that is not yet sufficiently stable to be considered permanent, the member is placed on the Temporary Disability Retired List ("Temporary DRL"). *See* 10 U.S.C. § 1202; Army Reg. 635-40 ¶ 4-27(2).

A service member may appeal a Formal PEB decision to the Army Physical Disability Agency. *See White*, 179 Fed. Cl. at 615 n.12; Army Reg. 635-40 ¶¶ 4-25 to -27. The Army Physical Disability Agency reviews PEB appeals and may approve PEB findings and recommendations on behalf of the Secretary of the Army. *See* Army Reg. 635-40 ¶ 4-25(a)(2)(e)(1).

### B.  Factual Background

In March 2017, after approximately sixteen years of active military service and three combat deployments to Iraq, Army medical personnel referred Plaintiff into the IDES process because of his PTSD. Proposed Fifth Am. Compl. ("5AC") ¶ 35, ECF No. 44-2. Mr. Grimsley's medical conditions included PTSD, TBI, migraine headaches, dizziness, multiple musculoskeletal conditions, and other ailments. *Id.* ¶ 36.

---

[3] Disability ratings reflect the severity of a service member's disability and are expressed as percentages representing the extent to which the disability impairs the member's overall health and functioning. *See* U.S. Dep't of Veterans Aff., *About Disability Ratings* (Nov. 5, 2024), https://www.va.gov/disability/about-disability-ratings/ [https://perma.cc/3JMA-ZDRK]. If a service member has more than one disability, the VA follows the "whole person theory" and calculates a combined disability rating, which cannot exceed 100% because "a person can't be more than 100% able-bodied." *Id.*

During the MEB phase, the VA conducted examinations of Plaintiff's claimed service-connected conditions. *Id.* ¶ 39. Plaintiff alleges that the VA examiners and MEB physicians were not provided the physical requirements of his military occupational specialty by rank when evaluating whether his conditions affected his ability to perform his military duties. *Id.* ¶ 38. After completing its review, including an Impartial Medical Review requested by Plaintiff, the MEB referred his case to an Informal PEB in September 2017 for a fitness determination. *Id.* ¶ 39.

Also in September 2017, the VA issued a proposed rating decision assigning a combined 100 percent disability rating for Plaintiff's PTSD and TBI. *Id.* ¶ 40. The Informal PEB determined that Plaintiff's combined PTSD/TBI condition and bilateral knee conditions were unfitting and recommended that he be placed on the Temporary DRL. *Id.* ¶ 39. According to Plaintiff, however, neither the MEB nor the Informal PEB evaluated Plaintiff's dizziness or assigned it a disability rating. *Id.* ¶¶ 39, 42.

Plaintiff appealed the Informal PEB's recommendation and requested review by a Formal PEB, asking that the Formal PEB consider the physical requirements of his military occupational specialty by rank in evaluating his fitness for duty. *Id.* ¶ 45. The Informal PEB forwarded the matter to the Formal PEB purportedly without issuing a written response addressing the issues raised in the appeal. *Id.* ¶ 46.

The Formal PEB convened in February 2018. *Id.* ¶ 47. At the hearing, Plaintiff presented a statement requesting placement on the Permanent DRL and responded to questions from the board members. *Id.* Rather than issuing a decision, the Formal PEB recessed and stated that it would request separate disability ratings for Plaintiff's PTSD and TBI from the VA before reconvening. *Id.*

In May 2018, the Formal PEB submitted a Rating Reconsideration Request to the VA, seeking separate disability ratings for Plaintiff's PTSD and TBI, but the VA denied the request in a new proposed rating decision. *Id.* ¶ 48. The Formal PEB reconvened in July 2018, found additional musculoskeletal conditions to be unfitting, and again recommended placement on the Temporary DRL. *Id.* ¶ 49. Following additional proceedings, the VA revised its proposed ratings by assigning separate disability ratings of 100 percent for PTSD and 70 percent for TBI and increasing the disability rating for migraine headaches from 0 to 50 percent. *Id.* ¶ 51. Plaintiff alleges that this revised proposed rating, however, still did not address his dizziness claim. *Id.*

In August 2018, the Formal PEB issued its final decision recommending that Mr. Grimsley be placed on the Permanent DRL based on additional unfitting conditions unrelated to PTSD. *Id.* ¶ 52. Plaintiff alleges that the Formal PEB nevertheless concluded that Mr. Grimsley's PTSD was not permanent and stable and again did not identify dizziness as an unfitting condition. *Id.*

Mr. Grimsley appealed the Formal PEB's decision to the Army Physical Disability Agency in September 2018. *Id.* ¶ 71. According to Plaintiff, the Physical Disability Agency denied the appeal, concluding that the issues he raised were either moot or meritless. *Id.* ¶ 72. Plaintiff's permanent retirement went into effect in February 2019. *Id.* ¶ 1.

### C.  Procedural Background

This action has been pending in federal court for nearly three years and has proceeded before both this Court and the U.S. Court of Federal Claims.

### 1.  Initial Proceedings in U.S. District Court

Appearing *pro se*, Plaintiff initially filed this action in this District in October 2023, challenging various aspects of the Army's disability evaluation process under the APA. *See*

Compl., *Grimsley v. Austin*, No. 1:23-cv-03104-RC (D.D.C.), Dkt. No. 1. Plaintiff subsequently amended his complaint to seek, among other relief, a declaration that he qualified for placement on the Permanent DRL in October 2017, an order establishing that date as his retirement date, and monetary damages in the form of backpay for the Army's alleged delay in placing him on the Permanent DRL. *See* Am. Compl., *Grimsley v. Austin*, No. 1:23-cv-03104-RC (D.D.C.), Dkt. No. 17. Because Plaintiff's amended complaint sought damages exceeding $10,000, Plaintiff moved to transfer the case to the U.S. Court of Federal Claims. Pl.'s Mem. Supp. Unopp. Mot. Transfer, *Grimsley v. Austin*, No. 1:23-cv-03104-RC (D.D.C.), Dkt. No. 18-1 at 1.The Court granted Plaintiff's unopposed motion and transferred the case in April 2024. *See* Order Grant. Pl.'s Unopp. Mot. Transfer, *Grimsley v. Austin*, No. 1:23-cv-03104-RC (D.D.C.), Dkt. No. 19.

2.  Proceedings in Court of Federal Claims

Following transfer, the Government moved to dismiss Plaintiff's Amended Complaint. *See* Second Mot. Dismiss, *Grimsley v. United States*, No. 1:24-cv-00991-MRS (Fed. Cl.), Dkt. No. 7. Plaintiff thereafter filed a Second Amended Complaint, rendering that motion moot. *See* Order, *Grimsley v. United States*, 1:24-cv-00991-MRS (Fed. Cl.), Dkt. No. 11. After the Government moved to dismiss the Second Amended Complaint, the Court of Federal Claims referred the matter to its pro bono attorney referral program. *See* Third Mot. Dismiss, *Grimsley v. United States*, 1:24-cv-00991-MRS (Fed. Cl.), Dkt. No. 16; Order, *Grimsley v. United States*, No. 1:24-cv-00991-MRS (Fed. Cl.), Dkt. No. 21.

After pro bono counsel entered an appearance on Plaintiff's behalf, Plaintiff sought leave to file a Third Amended Complaint and to transfer the case back to this Court. *See* Pl.'s Mot. Amend and Transfer, *Grimsley v. United States*, No. 1:24-cv-00991-MRS (Fed. Cl.), Dkt. No. 26. The Court of Federal Claims granted Plaintiff's motion, denied the pending motion to

dismiss as moot, and transferred the case back to this Court after concluding that Plaintiff was no longer seeking monetary relief within its jurisdiction and instead sought only declaratory and injunctive relief under the APA. *See* Order at 2, *Grimsley v. United States*, No. 1:24-cv-00991-MRS (Fed. Cl.), Dkt. No. 31; Transfer Order, *Grimsley v. United States*, No. 1:24-cv-00991-MRS (Fed. Cl.), Dkt. No. 32.

### 3.  Current Proceedings

After the case returned to this Court, Plaintiff moved for leave to file a Fourth Amended Complaint, which he represented substantially narrowed his claims and converted the matter into a putative class action. *See* Pl.'s Mot. Amend, ECF No. 37; Pl.'s Mem. Supp. Mot. Amend at 1, ECF No. 37-1. The Court granted Plaintiff's motion for leave to amend, noting that the Government had failed to oppose it. Min. Order (Aug. 27, 2025). The Government subsequently moved to dismiss the Fourth Amended Complaint, arguing that Plaintiff lacked Article III standing, inappropriately challenged nonfinal administrative actions, and sought relief the Court could not provide because he had already received a final disability determination. *See* Fourth Mot. Dismiss, ECF No. 38. While that motion to dismiss was pending, Plaintiff moved for leave to file a Fifth Amended Complaint.[4] *See* Pl.'s Mot. Leave to Amend, ECF No. 44; 5AC. Plaintiff contends that the proposed Fifth Amended Complaint provides additional factual development, expands the discussion of the IDES process and applicable regulations, and clarifies his legal theories. Pl.'s Mem. Supp. Mot. Amend at 4–6, ECF No. 44-1.

---

[4] Plaintiff filed his motion for leave three days before the Government's deadline to file its reply brief in support of its motion to dismiss. Per the Government's request, the Court held in abeyance the due date of the Government's reply brief pending the Court's resolution of Plaintiff's motion for leave. *See* Min. Order (Jan. 15, 2026). Because the Court denies Plaintiff's motion for leave to amend, as explained below, the Government has been directed to file its reply in support of its motion to dismiss the Fourth Amended Complaint on or before August 6, 2026, as stated in this Court's July 23, 2026 minute order. *See* Min. Order (Jul. 23, 2026).

The Fifth Amended Complaint alleges that, under Army Reg. 635-40 ¶ 5-7(c), PEBs automatically place service members with PTSD on the Temporary DRL and defer any determination regarding permanence until the post-retirement examination required by 38 C.F.R. § 4.129.[5] *See* 5AC ¶¶ 31 & n.15, 32. The complaint contends that such a policy violates 10 U.S.C. § 1201(b), which requires determinations regarding the permanence and stability of disabilities to be based on accepted medical principles. *Id.* ¶ 31. The complaint also alleges that the Army erroneously determined that Plaintiff's PTSD was not "permanent and stable," and that it unlawfully failed to evaluate his dizziness during the IDES process as required by 10 U.S.C. § 1216a(b).[6]  5AC ¶¶ 32–34.

As relevant here, Plaintiff prays for the following relief:

> [1] Declare DoD and the Army's policy of placing military Service members on the [Temporary] DRL for mental disabilities no matter what the medical evidence indicates for the permanency and stability of the disability violates the clear, unambiguous language of § 1201 . . . .;
>
> [2] Enjoin the DoD and the Army[] from applying the policy of placing military Service members on the [Temporary] DRL for mental disabilities no matter what the medical evidence indicates for the permanency of the disability as violating the clear, unambiguous language of § 1201 . . . .; [and]
>
> [3] Issue a Declaratory Judgment only that the final [Formal] PEB's factual finding that [Plaintiff's] PTSD is not permanent and stable is erroneous and that the failure to evaluate [Plaintiff's] dizziness

---

[5] That regulation provides: "When a mental disorder that develops in service as a result of a highly stressful event is severe enough to bring about the veteran's release from active military service, the rating agency shall assign an evaluation of not less than 50 percent and schedule an examination within the six month period following the veteran's discharge to determine whether a change in evaluation is warranted." 38 C.F.R. § 4.129.

[6] Section 1216a(b) requires the Secretary to "take into account all medical conditions" "[i]n making a determination of the rating of disability of a member of the armed forces." 10 U.S.C. § 1216a(b).

during his IDES is a constitutional due process violation and violates 10 U.S.C § 1216a([b]) . . . .

*Id.* at 35–36 ¶¶ 5–7.

The Government opposes Plaintiff's motion for leave to amend on the grounds of undue delay, prejudice, and futility, arguing that Plaintiff lacks standing and that his claims fail on the merits. *See* Def.'s Opp'n at 17–43, ECF No. 47. Plaintiff's motion for leave to file his Fifth Amended Complaint is now ripe for this Court's consideration.

### III.  LEGAL STANDARD

While "[t]he decision to grant or deny leave to amend 'is committed to a district court's discretion,'" *Klotzbach-Piper v. Nat'l R.R. Passenger Corp.*, 678 F. Supp. 3d 62, 69 (D.D.C. 2023) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam)), courts "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Courts should "freely give" leave to amend in the absence of one of the following: "[1] undue delay, [2] bad faith or dilatory motive on the part of the movant, [3] repeated failure to cure deficiencies by amendments previously allowed, [4] undue prejudice to the opposing party by virtue of allowance of the amendment, [or 5] futility of amendment." *Foman*, 371 U.S. at 182. An amendment is futile when it "merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." *Klotzbach-Piper*, 678 F. Supp. 3d at 69 (quoting *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 113 (D.D.C. 2012)).

### IV.  ANALYSIS

Plaintiff moves for leave to file his proposed Fifth Amended Complaint. The Court understands the proposed complaint to assert two theories. First, Plaintiff alleges that a purportedly unlawful DoD and Army policy delayed his placement on the Permanent DRL and,

10

consequently, delayed his receipt of disability-related benefits. Second, Plaintiff alleges that errors committed during the IDES process likewise delayed that outcome. *See* 5AC ¶¶ 73–106. Plaintiff seeks declaratory and injunctive relief. But neither form of relief would likely redress the injury alleged in the proposed complaint. Plaintiff therefore has not plausibly alleged standing, rendering amendment futile.

"[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (citation modified). To establish standing, a plaintiff must demonstrate "(1) [an] injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[7] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* Redressability "examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *West v. Lynch*, 845 F.3d 1228, 1235 (D.C. Cir. 2017) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996) (en banc)). Accordingly, "[t]he starting point in the redressability analysis is necessarily the relief sought." *Abulhawa v. U.S. Dep't of the Treasury*, 239 F. Supp. 3d 24, 36 (D.D.C. 2017), *aff'd*, No. 17-5158, 2018 WL 3446699 (D.C. Cir. June 19, 2018).

Plaintiff has not plausibly alleged that either category of relief he requests would redress the injury alleged in the proposed complaint—namely, the delay in obtaining a final disability

---

[7] That Plaintiff seeks to bring a class action "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo*, 578 U.S. at 338 n.6 (citation modified).

determination and the corresponding delay in receiving disability-related benefits. The Court addresses each category of requested relief in turn.

First, Plaintiff challenges what he alleges is an unlawful DoD and Army policy of placing service members with qualifying mental health conditions on the Temporary DRL pursuant to 38 C.F.R. § 4.129, regardless of whether the medical evidence supports placement on the Permanent DRL. 5AC ¶¶ 32, 73–85. Plaintiff alleges that the policy resulted in the Informal and Formal PEBs initially recommending that he be placed on the Temporary DRL. *Id.* ¶¶ 86–98. Although those recommendations were later reversed and Plaintiff was ultimately retired on the Permanent DRL, Plaintiff alleges that the initial recommendations delayed both his placement on the Permanent DRL and his receipt of disability-related benefits. *Id.* ¶¶ 88–98. Plaintiff therefore seeks a declaration that the policy is unlawful and an injunction prohibiting the DoD and Army from applying it. *Id.* at 35–36 ¶¶ 5–7.

But neither the requested declaration nor the requested injunction would remedy that alleged past delay.[8] Declaratory and injunctive relief are prospective remedies. See, *e.g.*, *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 31 (2010). A plaintiff seeking such relief must demonstrate an ongoing or imminent injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–10 (1983). "Past injuries alone are insufficient." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). Even if the Court declared the alleged policy unlawful and enjoined its application, such relief would have no practical effect on Plaintiff.

Plaintiff does not allege that he will again undergo the IDES process or otherwise be subjected to the challenged policy. Nor could he. He completed the IDES process over 7 years

---

[8] Typically, "once [an agency] has rendered a final decision," like the Army has in this case, "the issue of regulatory delay will be moot and beyond [the court's] effective power to remedy." *Potomac Elec. Power Co. v. I.C.C.*, 702 F.2d 1026, 1035 (D.C. Cir. 1983).

ago and has been permanently retired on the Permanent DRL with a 100 percent disability rating ever since.[9] *See* 5AC ¶ 1. And Plaintiff does not seek to set aside that final disability determination and be reevaluated. *See generally* 5AC at 35–36 ¶¶ 1–10 (prayer for relief). Plaintiff's injury thus remains wholly in the past. *See NonBelief Relief, Inc. v. Rettig*, No. CV 18-2347, 2020 WL 122974, at \*4 (D.D.C. Jan. 10, 2020) (holding that a plaintiff who was no longer subject to the challenged governmental action lacked standing to seek prospective declaratory and injunctive relief because such relief could not redress such a past injury). Because Plaintiff has not plausibly alleged an ongoing or imminent injury that the requested declaratory and injunctive relief would redress, he lacks standing to pursue those claims. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015); *Gerlich v. U.S. Dep't of Just.*, 659 F. Supp. 2d 1, 19 (D.D.C. 2009).

Second, Plaintiff challenges two aspects of the Army's disability determination. Specifically, he alleges that the Army erroneously found that his PTSD was not permanent and stable and that it unlawfully failed to evaluate his dizziness during the IDES process as required by 10 U.S.C. § 1216a(b). 5AC ¶¶ 32–33. According to Plaintiff, those errors also delayed his placement on the Permanent DRL and, consequently, delayed his receipt of disability-related benefits.[10] *Id.* ¶¶ 34, 55, 98. Plaintiff therefore asks this Court to declare that the Army's factual

---

[9] Nor is Plaintiff subject to reexamination under 38 C.F.R. § 4.129 having been retired for over 7 years, as Plaintiff appears to acknowledge. *See* 5AC ¶ 58 n.21

[10] The proposed complaint as pleaded does not otherwise allege any ongoing or imminent implications stemming from the asserted errors. However, for the first time in his reply brief, Plaintiff posits that the challenged intermediate steps and determinations could have future consequences. *See* Pl.'s Reply at 24–25. But it is well established that a plaintiff may not amend a proposed complaint through allegations and arguments raised for the first time in a reply brief. *See, e.g.*, *Mattiaccio v. DHA Grp., Inc.*, 293 F.R.D. 229, 233 (D.D.C. 2013) (denying leave to amend where the plaintiff attempted to cure deficiencies in the proposed complaint by raising new allegations and theories for the first time in his reply brief). The Court thus assesses Plaintiff's standing based on the allegations contained in the proposed complaint. *See Ferrer v.*

finding regarding the permanence of his PTSD was erroneous and that its failure to evaluate his dizziness violated due process and § 1216a. *See* 5AC at 35–36 ¶7. Plaintiff characterizes the requested declaration as seeking, and effectively accomplishing, a correction to his military records. *See* Pl.'s Reply at 23.

That requested declaration would also have no effect on Plaintiff. Although he asks this Court to declare that portions of the Formal PEB's disability determination were erroneous, Plaintiff does not seek to set aside the final disability determination or remand the matter to the Army for reconsideration in light of those purported errors. Thus, even if the Court entered the requested declaration, the Army's final disability determination—and Plaintiff's military records—would remain unchanged. Any such change would require further agency action—such as reconsideration on remand in light of the Court's legal conclusions, if appropriate. Because Plaintiff does not seek that relief, the declaration he requests would not itself remedy the alleged inaccuracy in his military records.[11]

Because Plaintiff does not seek a remand requiring the Army to reconsider its disability determination, the requested declaration would serve only to announce that the Army acted

---

*CareFirst, Inc.*, 265 F. Supp. 3d 50, 52 (D.D.C. 2017) (At the pleading stage, "the standing inquiry turns on the allegations in the complaint." (quoting *Haase v. Sessions*, 835 F.2d 902, 907 (D.C. Cir. 1987)).

[11] This conclusion is consistent with the APA's limited framework for judicial review. Where a reviewing court identifies legal error in agency action, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999) ("Under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards."). When reviewing agency action, the district court "does not perform its normal role but instead sits as an appellate tribunal." *Palisades Gen'l Hosp. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005) (citation modified). Rather, it reviews the agency's decision and, if appropriate, remands to permit the agency to exercise its own judgment in the first instance. *See id.*

unlawfully in the past, rather than remedy any ongoing or imminent injury, which the proposed complaint does not allege. *See supra* note 10. Courts, however, "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998); *see also Conyers v. Reagan*, 765 F.2d 1124, 1127 (D.C. Cir. 1985) ("A federal court may not . . . declare principles or rules of law which cannot affect the matter in issue in the case before it." (citation modified)); *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017) ("[D]eclaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction."). To grant declaratory relief under such circumstances would "amount[] to exactly the type of advisory opinion Article III prohibits." *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008).

Nor does Plaintiff's characterization of some of these alleged errors as procedural due process violations alter the standing analysis. Although a plaintiff who has been accorded a procedural right to protect a concrete interest may assert that right without satisfying the ordinary requirements of immediacy and redressability in full, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572 n.7 (1992), the doctrine still requires the plaintiff to show "some possibility that the requested relief w[ould] prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant," *Garcia v. Stewart*, 531 F. Supp. 3d 194, 204 (D.D.C. 2021) (quoting *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007)). That "some possibility" is absent here. As explained, Plaintiff does not seek relief that would require the Army to reconsider its final disability determination in light of any errors the Court identifies; instead, he seeks only a declaration that the Army acted unlawfully during the process leading to that determination. Because the requested relief would leave the Army's final disability determination undisturbed,

15

Plaintiff has not plausibly alleged "some possibility" that it would prompt the Army to revisit any decision allegedly affected by the asserted procedural errors. *See id.* The relaxed redressability standard therefore does not save Plaintiff's claim.[12] Accordingly, Plaintiff lacks standing to seek declaratory relief based on the alleged errors committed during the IDES process.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to File a Fifth Amended Complaint (ECF No. 44) is **DENIED**. As previously ordered, Defendant shall file its reply in

---

[12] In any event, Plaintiff has not established that this Court may consider his due process claim before he has exhausted the available administrative remedies. As noted above, Plaintiff characterizes the relief he seeks as a correction to his military records. Yet the declaratory relief he requests—without a remand for the Army to reconsider its disability determination—would not itself effectuate any such correction, as explained above. Claims seeking correction of military records are ordinarily first presented to a board of military record corrections—here, the Army Board for Correction of Military Records ("ABCMR")—a forum Plaintiff appears to acknowledge. *See* 5AC ¶ 29; 32 C.F.R. § 581.3.

"As a rule of thumb, courts 'should not review internal military affairs in the absence of . . . exhaustion of available intraservice corrective measures.'" *Kelly v. Hegseth*, 820 F. Supp. 3d 1, 15 (D.D.C. 2026) (quoting *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986)); *see also Church v. Biden*, 573 F. Supp. 3d 118, 137 (D.D.C. 2021) ("[A]n aggrieved military officer must first exhaust his administrative remedies . . . prior to litigating his claims in a federal court." (quoting *Bois*, 801 F.2d at 468)). "This requirement follows from the prudential rule that parties should 'exhaust prescribed administrative remedies before seeking relief from the federal courts.'" *Kelly*, 820 F. Supp. 3d at 15 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992)). Exhaustion is particularly appropriate where there is no reason to believe that the military correction board "lacks the power to provide [the plaintiff] with complete relief" or "would not fairly consider all [of the plaintiff's] claims." *Bois*, 801 F.2d at 468. Indeed, claims based on constitutional provisions, executive orders, and Army regulations "[can] readily [be] made within the framework of this intramilitary procedure." *Id.* at 467.

Here, Plaintiff has not plausibly alleged that he ever sought correction of his military records before the ABCMR and presented his due process claim to that body. Nor has he identified any reason why the ABCMR could not consider in the first instance the asserted due process violations in connection with any military record correction request. Accordingly, Plaintiff has not plausibly alleged that he exhausted the "available intraservice corrective measures" before seeking relief in this Court. *See Bois*, 801 F.2d at 468 (citation modified).

16

support of its motion to dismiss the Fourth Amended Complaint on or before August 6, 2026.

*See* Min. Order (Jul. 23, 2026). An order consistent with this Memorandum Opinion is separately

and contemporaneously issued.

Dated:  August 3, 2026                                    RUDOLPH CONTRERAS
                                                          United States District Judge