**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| RICHARD J. GRIMSLEY, III, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 25-1453 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 38, 39 |
| | : | | |
| UNITED STATES OF AMERICA, | : | | |
| | : | | |
| Defendant. | : | | |

# MEMORANDUM OPINION

## GRANTING DEFENDANT'S MOTION TO DISMISS; GRANTING DEFENDANT'S MOTION FOR RELIEF FROM LOCAL RULE 7(N)(1)

## I. INTRODUCTION

Plaintiff Richard J. Grimsley ("Plaintiff") is a retired Army veteran who suffers from post-traumatic stress disorder ("PTSD") and a traumatic brain injury ("TBI"), among other ailments. As a result of those conditions, the Army permanently retired Plaintiff with a 100% disability rating. Plaintiff challenges that decision. He alleges that the Department of Defense and the Army maintain an unlawful policy governing military disability retirement and otherwise committed legal errors during his disability evaluation process. According to Plaintiff, that purported policy and those alleged errors delayed his permanent disability retirement and, consequently, his receipt of disability-related benefits. He seeks declaratory and injunctive relief under the Administrative Procedure Act ("APA").

Before the Court is Defendant's Motion to Dismiss the Fourth Amended Complaint. This Court recently declined Plaintiff's request for leave to file his Fifth Amended Complaint. The Court explained that the proposed complaint had not plausibly alleged that the requested relief would redress Plaintiff's past alleged injuries. Plaintiff therefore lacked Article III standing, and

amendment was thus futile. The Fourth Amended Complaint—which is materially similar to the proposed Fifth Amended Complaint in all relevant respects—suffers from the same deficiency: it likewise fails to plausibly allege that the requested relief would redress Plaintiff's alleged injuries. The Court therefore grants Defendant's motion and dismisses Plaintiff's Fourth Amended Complaint.

## II. BACKGROUND

The Court presumes the parties' familiarity with the underlying legal and regulatory framework and the procedural history of this case, which are described in the Court's prior memorandum opinion. *See* Mem. Op. Den. Pl.'s Mot. Leave File Fifth Am. Compl. ("Fifth Am. Compl. Mem. Op."), ECF No. 52. The Court therefore recounts only the facts and procedural history necessary to resolve the present motion.

### A. Factual Background[1]

In March 2017, after approximately sixteen years of active military service and three combat deployments to Iraq, Army medical personnel referred Plaintiff into the Integrated Disability Evaluation System ("IDES") process because of his PTSD. Fourth Am. Compl. ("4AC") ¶ 35, ECF No. 37-2. Mr. Grimsley's medical conditions also include TBI, migraine headaches, dizziness, multiple musculoskeletal conditions, and other ailments. *Id.* ¶ 36.

During the Medical Evaluation Board ("MEB") phase, the Department of Veteran Affairs ("VA") conducted examinations of Plaintiff's claimed serviced-connected conditions. *Id.* ¶ 39. Plaintiff alleges that the VA examiners and MEB physicians were not provided the physical tasks of his primary military occupational specialty ("PMOS") by rank when evaluating whether his

[1] Although the Court previously detailed the factual background underlying Plaintiff's claims, it recounts here the allegations drawn from the Fourth Amended Complaint.

conditions affected his ability to perform his military duties. *Id.* ¶ 38. After completing its review, including an Impartial Medical Review requested by Plaintiff, the MEB referred his case to an Informal Physical Evaluation Board ("Informal PEB") in September 2017 for a fitness determination. *Id.* ¶ 39.

Also in September 2017, the VA issued a proposed rating assigning a combined 100 percent disability rating for Plaintiff's PTSD and TBI. *Id.* ¶ 40. The Informal PEB determined that Plaintiff's combined PTSD/TBI and bilateral knee conditions were unfitting and recommended that he be placed on the Temporary Disability Retirement List ("Temporary DRL"). *Id.* ¶ 39. Plaintiff claims that, at that time, the medical evidence upon which the VA's proposed rating was based proved that his PTSD/TBI condition was permanent and stable. *Id.* ¶ 40. Plaintiff also claims that the unrated conditions similarly rendered him incapable of reasonably accomplishing the tasks required of his military occupation and rank. *Id.* ¶ 41.

Plaintiff appealed the Informal PEB's decision and requested review by a Formal Physical Evaluation Board ("Formal PEB"), asking that the Formal PEB consider the physical requirements of his military occupational specialty by rank in evaluating his fitness for duty. *Id.* ¶ 45. The Informal PEB forwarded the matter to the Formal PEB but purportedly without issuing a written response addressing the issues Plaintiff raised in the appeal. *Id.* ¶ 46.

The Formal PEB convened in February 2018. *Id.* ¶ 56. At the hearing, Plaintiff requested placement on the Permanent DRL and responded to questions from the board members. *Id.* ¶ 47. Rather than issuing a decision, the Formal PEB recessed and stated that it would request separate disability ratings for Plaintiff's PTSD and TBI from the VA before reconvening. *Id.*

In May 2018, the Formal PEB submitted a Rating Reconsideration Request to the VA seeking separate disability ratings for Plaintiff's PTSD and TBI, but the VA denied the request in

a new proposed rating decision. *Id.* ¶ 48. The Formal PEB reconvened in July 2018, found additional conditions to be unfitting, and again recommended placement on the Temporary DRL. *Id.* ¶ 49. Following additional proceedings, the VA revised its proposed ratings by assigning separate disability ratings of 100 percent for PTSD and 70 percent for TBI and increasing the disability rating for migraine headaches from 0 to 50 percent. *Id.* ¶ 51. Plaintiff alleges that this revised proposed rating, however, still did not address his claim of dizziness. *Id.*

In August 2018, the Formal PEB issued its final decision recommending that Plaintiff be placed on the Permanent DRL based on additional conditions unrelated to PTSD. *Id.* ¶ 52. Plaintiff alleges that the Formal PEB nevertheless concluded that his PTSD was not permanent and stable, contradicting contemporaneous medical reports by the VA. *Id.* ¶¶ 59, 60.

Plaintiff appealed the Formal PEB's decision to the Army Physical Disability Agency in September 2018. *Id.* ¶ 74. According to Plaintiff, the Physical Disability Agency denied the appeal, concluding that the issues he raised were moot, as Plaintiff's permanent retirement had already gone into effect. *Id.* ¶ 100.

**B. Procedural Background**

After this case was transferred to this Court from the Court of Federal Claims, Plaintiff moved for leave to file a Fourth Amended Complaint, which he represented substantially narrowed his claims and converted the matter into a putative class action. *See* Mot. to Amend, ECF No. 37. The Court granted Plaintiff's motion for leave to amend, noting that the Government had failed to oppose it. Min. Order (Aug. 27, 2025). The Government subsequently moved to dismiss the Fourth Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Fourth Mot. to Dismiss at 16–29, ECF No. 38. While that motion to dismiss was pending, Plaintiff moved for leave to file a Fifth Amended Complaint. *See* Mot. for

Leave to Amend, ECF No. 44; Fifth Am. Compl., ECF No. 44-2. The Court, however, denied Plaintiff such leave, explaining that the proposed complaint failed to sufficiently establish that Plaintiff had standing, as none of the requested relief would redress his asserted injuries. *See* Fifth Am. Compl. Mem. Op. at 15–16.

Now before the Court is Defendant's motion to dismiss the Fourth Amended Complaint.[2] The Fourth Amended Complaint alleges that, under Army Reg. 635-40, PEBs automatically place service members with PTSD on the Temporary DRL and defer any determination regarding permanence until the post-retirement examination required by 38 C.F.R. § 4.129.[3] *See* 4AC ¶¶ 4–7, 30–31, 89–101. The complaint contends that such a policy violates 10 U.S.C. § 1201(b), which requires determinations regarding the permanence and stability of disabilities to be based on accepted medical principles. *Id.* The complaint also alleges that the MEB examinations erroneously failed to account for the requirements of his PMOS by rank; according to the complaint, the MEB was therefore "incapable of [correctly] evaluating the effect of his

[2] Defendant also filed a Motion for Relief from Local Civil Rule 7(n)(1), contending that it should be excused from complying with the local rule because their motion to dismiss does not rely on the administrative record. Defs.' Mot. for Relief from Local R. 7(n) at 1, 3, ECF No. 39. Plaintiff opposes Defendants' motion because "the Agency's MTD cites evidence contrary to contentions and evidence in the Complaint," the Court necessarily must review the record to decide the motion to dismiss, and the motion to dismiss is "replete" with references to the records. Pls.' Opp'n Mot. for Relief from Local R. 7(n) at 1, ECF No. 40. Because the Court grants Defendant's motion to dismiss for lack of standing, as explained below, the Court grants Defendant's motion for relief; the administrative record is unnecessary for resolving Defendant's dispositive motion. *See Connecticut v. U.S. Dep't of Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018).

[3] That regulation provides: "When a mental disorder that develops in service as a result of a highly stressful event is severe enough to bring about the veteran's release from active military service, the rating agency shall assign an evaluation of not less than 50 percent and schedule an examination within the six month period following the veteran's discharge to determine whether a change in evaluation is warranted." 38 C.F.R. § 4.129.

conditions . . . on his physical ability to reasonably perform [his] duties." *Id.* at ¶¶ 38, 44, 102–108.

As relevant here, Plaintiff's Fourth Amended Complaint prays for the following relief:

> [1] Declare DoD and the Army's policy of placing military service members on the [Temporary] DRL for mental disabilities no matter what the medical evidence indicates for the permanency and stability of the disability violates the clear, unambiguous language of § 1201 . . . .
>
> [2] Enjoin the DoD and the Army from applying the policy of placing military service members on the [Temporary] DRL for mental disabilities no matter what the medical evidence indicates for the permanency of the disability as violating the clear, unambiguous language of § 1201 . . . .
>
> [3] Declare the DoD and the Army conduct of conducting a fitness for duty medical examinations without the physical requirements commensurate for SFC Grimsley's rank for his PMOS was unlawful.

*Id.* at 32 ¶¶ 5–7 (Prayer for Relief).

In its motion, Defendants assert that Plaintiff lacks Article III standing, inappropriately challenges nonfinal administrative actions, has sought relief the Court cannot provide because he has already received a final disability determination, and that Plaintiff has failed to meet the Federal Rule of Civil Procedure 23 requirements for bringing a class action. *See* Def.'s Fourth Mot. Dismiss at 16–30. Plaintiff opposes Defendant's motion to dismiss, arguing that he has sufficiently pleaded standing, that the agency action he challenges is a final action, and that he has met the class action requirements. *See* Pls.' Opp'n at 9–27, ECF No. 41. Defendant's motion to dismiss the Fourth Amended Complaint is now ripe for this Court's consideration.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule ("Rule") 12(b)(1), a claim must be dismissed if a district court lacks subject-matter jurisdiction to entertain the claim. Fed. R. Civ. P. 12(b)(1).

Rule 12(b)(6), on the other hand, requires a court to dismiss "a claim upon which relief can[not] be granted." Fed. R. Civ. P. 12(b)(6). When a defendant files a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6), a court must first examine the Rule 12(b)(1) challenges, *U.S. ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 920–21(D.C. Cir. 1999), because "if [the Court] must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined," *Epps v. U.S. Capitol Police Bd.*, 719 F. Supp. 2d 7, 12 (D.D.C. 2010) (quoting *Rhulen Ag., Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990); *see also Bell v. Hood*, 327 U.S. 678, 682 (1946) (holding that a motion to dismiss for failure to state a claim may be decided only after finding subject-matter jurisdiction).

Because Rule 12(b)(1) concerns a court's ability to hear a particular claim, the court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under Rule 12(b)(6). *See Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Epps*, 719 F.Supp.2d at 11–12; *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). In deciding a motion to dismiss under Rule 12(b)(1), a court must "accept as true all of the factual allegations contained in the complaint" and draw all reasonable inferences in favor of the plaintiff, *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008), but courts are "not required . . . to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations," *Rann v. Chao*, 154 F.Supp.2d 61, 64 (D.D.C. 2001). Ultimately, the plaintiff bears the burden of establishing the court's jurisdiction, *see Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994), and where subject-matter jurisdiction does not exist, "the court cannot proceed at all in

any cause," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1869)).

## IV. ANALYSIS

Defendant moves to dismiss Plaintiff's Fourth Amended Complaint. The Court previously found futile Plaintiff's request to file a Fifth Amended Complaint because the proposed complaint failed to plausibly allege standing. Fifth Am. Compl. Mem. Op. at 10–12. The Fourth and Fifth Amended Complaints are materially similar in all relevant respects. Both allege similar material facts and advance the same two legal theories: (1) an allegedly unlawful DoD and Army policy delayed Plaintiff's placement on the Permanent DRL and, consequently, his receipt of disability-related benefits; and (2) errors committed during the IDES process likewise delayed that outcome.[4] *See* 4AC ¶¶ 91–92, 97–101; Fifth Am. Compl. ¶¶ 88–89, 94–98. Both also seek substantially the same declaratory and injunctive relief. The Court's prior analysis of the Fifth Amended Complaint therefore applies with equal force to the Fourth Amended Complaint. The conclusion is the same: neither form of relief Plaintiff seeks would likely redress the injuries alleged. Therefore, Plaintiff has not plausibly alleged that he has Article III standing, and the Fourth Amended Complaint must be dismissed.

"[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439

[4] There is a slight variation between the precise errors Plaintiff identifies as having occurred during the IDES process in the Fourth and Fifth Amended Complaints. In the Fifth Amended Complaint, Plaintiff alleged that the Army erroneously determined that his PTSD was not permanent and stable and unlawfully failed to evaluate his dizziness as required by 10 U.S.C. § 1216a(b). *See* Fifth Am. Compl. Mem. Op. at 13. In the Fourth Amended Complaint, by contrast, Plaintiff asserts that the MEB examinations erroneously failed to account for the requirements of his PMOS by rank. Regardless of this slight variation, the conclusion is the same; the relief Plaintiff seeks would not redress any such error, as explained below. *See infra* pp. 10–13.

(2017) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). To establish standing, a plaintiff must demonstrate "(1) [an] injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[5] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* Redressability, "examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *West v. Lynch*, 845 F.3d 1228, 1235 (D.C. Cir. 2017) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996) (en banc)). Accordingly, "[t]he starting point in the redressability analysis is necessarily the relief sought." *Abulhawa v. U.S. Dep't of the Treasury*, 239 F. Supp. 3d 24, 36 (D.D.C. 2017).

Plaintiff has not plausibly alleged that either category of relief he requests would redress the injury alleged in the Fourth Amended Complaint—namely, the delay in obtaining a final disability determination and the corresponding delay in receiving disability-related benefits. The Court addresses each category of requested relief in turn.

First, Plaintiff challenges what he alleges is an unlawful DoD and Army policy of placing service members with qualifying mental health conditions on the Temporary DRL pursuant to 38 C.F.R. § 4.129 regardless of whether the medical evidence supports placement on the Permanent DRL. 4AC ¶¶ 4–7, ¶ 4 n.1. Plaintiff alleges that the policy resulted in the Informal and Formal PEBs initially recommending that he be placed on the Temporary DRL. *Id.* ¶¶ 40, 42, 50. Although those recommendations were later reversed and Plaintiff was ultimately retired on the

---

[5] That Plaintiff seeks to bring a class action "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo*, 578 U.S. at 338 n.6 (citation modified).

Permanent DRL, Plaintiff alleges that the initial recommendations delayed both his placement on the Permanent DRL and his receipt of disability-related benefits. *Id.* ¶¶ 57, 73. Plaintiff therefore seeks a declaration that the policy is unlawful and an injunction prohibiting the DoD and Army from applying it. *Id.* at 32 ¶¶ 4–7 (Prayer for Relief).

But neither the requested declaration nor the requested injunction would remedy that alleged past delay.[6] Declaratory and injunctive relief are prospective remedies. *See*, *e.g.*, *Los Angeles County v. Humphries*, 562 U.S. 29, 31, 37 (2010). A plaintiff seeking such relief must demonstrate an ongoing or imminent injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–03 (1983). "Past injuries alone are insufficient." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). Even if the Court declared the alleged policy unlawful and enjoined its application, such relief would have no practical effect on Plaintiff.

Plaintiff does not allege that he will again undergo the IDES process or otherwise be subjected to the challenged policy. Nor could he. He completed the IDES process over 7 years ago and has been permanently retired on the Permanent DRL with a 100% disability rating ever since.[7] *See* Fifth Am. Compl. Mem. Op. at 13 n.9. And Plaintiff does not seek to set aside that final disability determination and be reevaluated. *See generally* 4AC at 31–33 ¶¶ 1–10 (Prayer for Relief). Plaintiff's injury thus remains wholly in the past. *See NonBelief Relief, Inc. v. Rettig*, No. CV 18-2347, 2020 WL 122974, at *4 (D.D.C. Jan. 10, 2020) (holding that a plaintiff who was no longer subject to the challenged governmental action lacked standing to seek prospective declaratory and injunctive relief because such relief could not redress such a past injury).

[6] Typically, "once [an agency] has rendered a final decision," like the Army has in this case, "the issue of regulatory delay will be moot and beyond [the court's] effective power to remedy." *Potomac Elec. Power Co. v. I.C.C.*, 702 F.2d 1026, 1035 (D.C. Cir. 1983).

[7] Nor is Plaintiff subject to reexamination under 38 C.F.R. § 4.129 having been retired for over 7 years. *See* Fifth Am. Compl. Mem. Op at 13 n.9.

Because Plaintiff has not plausibly alleged an ongoing or imminent injury that the requested declaratory and injunctive relief would redress, he lacks standing to pursue those claims. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015); *Gerlich v. U.S. Dep't of Justice*, 659 F. Supp. 2d 1, 19 (D.D.C. 2009).

Second, Plaintiff challenges a preliminary aspect of the Army's disability determination. Specifically, he alleges that the Informal PEB's initial recommendation relied on erroneous MEB findings. 4AC ¶¶ 30, 38–39, 43–44. According to Plaintiff, the examiners who conducted the medical examinations underlying the MEB's findings were not provided with the physical requirements for his PMOS commensurate with his rank. *Id.* at ¶ 44. Because the examiners allegedly lacked that information, Plaintiff contends that they were incapable of evaluating whether his conditions affected his ability to perform the physical duties required by his PMOS. *Id.* ¶¶ 104, 107. Plaintiff further alleges that the MEB and the Informal Medical Review failed to reject those allegedly inadequate examinations, as required by regulation, despite him repeatedly raising the issue during the IDES process. *See id.* ¶¶ 104–08. He contends that these errors affected the subsequent fitness determinations and, ultimately, delayed his placement on the Permanent DRL and his receipt of disability-related benefits. *See id.* Plaintiff therefore asks the Court to declare that the MEB's findings and actions were unlawful, and that they violated his due-process right to a fair medical examination. *See id.* at 32 ¶¶ 4–7 (Prayer for Relief).[8]

That requested declaration would also have no effect on Plaintiff. Although he asks this Court to declare that the Army's conduct during the MEB process was unlawful, Plaintiff does not seek to set aside the Army's final disability determination or remand the matter to the Army

[8] The proposed complaint as pleaded does not otherwise allege any ongoing or imminent implications stemming from the asserted errors.

for reconsideration in light of the purported errors. Thus, even if the Court entered the requested declaration, the Army's final disability determination—and Plaintiff's military records—would remain unchanged. Any such change would require further agency action, such as reconsideration on remand in light of the Court's legal conclusions, if appropriate. Because Plaintiff does not seek that relief, the declaration he requests would not itself remedy the alleged errors committed during the Army's disability-evaluation process or alter the resulting determination.[9]

Because Plaintiff does not seek a remand requiring the Army to reconsider its disability determination, the requested declaration would serve only to announce that the Army acted unlawfully in the past, rather than remedy any ongoing or imminent injury, which the Fourth Amended Complaint does not allege. *See supra* note 9. Courts, however, "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998); *see also Conyers v. Reagan*, 765 F.2d 1124, 1127 (D.C. Cir. 1985) ("[A] federal court may not declare principles or rules of law which cannot affect the matter at issue in the case before it."); *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017) ("[D]eclaratory judgment merely adjudicating past violations of

[9] This conclusion is consistent the APA's limited framework for judicial review. Where a reviewing court identifies legal error in agency action, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also County of Los Angeles v. Shalala*, 192 F.3d 1005, 1022 (D.C. Cir. 1999) ("Under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards."). The district court "does not perform its normal role but instead sits as an appellate tribunal" and therefore has "no jurisdiction to order specific relief," but instead reviews the agency's decision and, if appropriate, remands to permit the agency to exercise its own judgment in the first instance. *Palisades Gen'l Hosp. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005) (citation modified).

federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction."). To grant declaratory relief under such circumstances would "amount[] to exactly the type of advisory opinion Article III prohibits." *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008).

Nor does Plaintiff's characterization of this alleged error as a procedural due process violation alter the standing analysis. Although a plaintiff who has been accorded a procedural right to protect a concrete interest may assert that right without satisfying the ordinary requirements of immediacy and redressability in full, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572 n.7 (1992), the doctrine still requires the plaintiff to show "some possibility that the requested relief w[ould] prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant," *Garcia v. Stewart*, 531 F. Supp. 3d 194, 204 (D.D.C. 2021) (quoting *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007)). That "some possibility" is absent here. As explained, Plaintiff does not seek relief that would require the Army to reconsider its final disability determination in light of any error the Court identifies; instead, he seeks only a declaration that the Army acted unlawfully during the process leading to that determination. Because the requested relief would leave the Army's final disability determination undisturbed, Plaintiff has not plausibly alleged "some possibility" that it would prompt the Army to revisit any decision allegedly affected by the asserted procedural errors. *See id.* The relaxed redressability standard therefore does not save Plaintiff's claim.[10] Accordingly, Plaintiff lacks

[10] In any event, Plaintiff has not established that this Court may consider his due process claim before he has exhausted the available administrative remedies. Previously, Plaintiff characterized the relief he seeks as a correction to his military records. *See* Fifth Am. Compl. Mem. Op. at 14. As the Court explained, the declaratory relief he requests—without a remand for the Army to reconsider its disability determination—would not itself effectuate any such correction. *Id.* at 14, 16 n.12. Claims seeking correction of military records are ordinarily first

standing to seek declaratory relief based on the alleged errors committed during the IDES process.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Fourth Amended Complaint (ECF No. 38) is **GRANTED**, and Defendant's Motion for Relief from Local Rule 7(n)(1) (ECF No. 39) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 21, 2026

RUDOLPH CONTRERAS
United States District Judge

---

presented to a board of military record corrections—here, the Army Board for Correction of Military Records ("ABCMR"). *Id.* at 16 n.12.

"As a rule of thumb, courts 'should not review internal military affairs in the absence of . . . exhaustion of available intraservice corrective measures.'" *Kelly v. Hegseth*, 820 F. Supp. 3d 1, 15 (D.D.C. 2026) (quoting *Bois v. Marsh*, 801 F.2d 462, 478 (D.C. Cir. 1986)); *see also Church v. Biden*, 573 F. Supp. 3d 118, 137 (D.D.C. 2021) ("[A]n aggrieved military officer must first exhaust his administrative remedies . . . prior to litigating his claims in a federal court." (quoting *Bois*, 801 F.2d at 468)). "This requirement follows from the prudential rule that parties should 'exhaust prescribed administrative remedies before seeking relief from the federal courts.'" *Kelly*, 820 F. Supp. 3d at 15 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992)). Exhaustion is particularly appropriate where there is no reason to believe that the military correction board "lacks the power to provide [the plaintiff] with complete relief" or "would not fairly consider all [of the plaintiff's] claims." *Bois*, 801 F.2d at 467. Indeed, claims based on constitutional provisions, executive orders, and Army regulations "[can] readily [be] made within the framework of this intramilitary procedure." *Id.*

To the extent the Fourth Amended Complaint also seeks a military record correction, Plaintiff has not plausibly alleged that he ever sought correction before the ABCMR and presented his due process claim to that body. Nor has he identified any reason why the ABCMR could not consider in the first instance the asserted due process violations in connection with any military record correction request. Accordingly, Plaintiff has not plausibly alleged that he exhausted the "available intraservice corrective measures" before seeking relief in this Court. *See Bois*. 801 F.2d at 468.